(Slip Opinion)

# Federal Vacancies Reform Act's Application to a Vacancy for Which Prior Presidents Submitted Multiple Nominations

Upon the inauguration of a new President, the Federal Vacancies Reform Act restarts the entire timing sequence for acting service in a position that was vacant on inauguration day, authorizing an acting official to serve for up to 300 days after inauguration day, during the pendency of the new President's first and second nominations for the vacant position, and for 210 days following the rejection, withdrawal, or return of a first or second nomination submitted by the new President.

October 21, 2022

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked whether the Acting Inspector General of the Department of Defense may continue to serve in an acting capacity consistent with the time limitations established by the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345–3349d. The position of Inspector General is filled through appointment by the President, by and with the advice and consent of the Senate. Inspector General Act of 1978, 5 U.S.C. app. §§ 3(a), 12(2), 12(4). The Vacancies Reform Act authorizes acting service when that position is vacant, subject to the Act's time limitations. 5 U.S.C. § 3345(a). We understand that the last Senate-confirmed Inspector General left office on January 8, 2016, and since that time, an Acting Inspector General has performed the functions and duties of the office during certain intervals. President Obama and President Trump each submitted two nominations to the Senate to fill the vacancy, all four of which were either returned by the Senate or withdrawn.[1] President Biden withdrew President Trump's second nomination on February 4, 2021, at

---

[1] President Obama's first nomination was submitted on September 28, 2016, and returned on January 3, 2017. PN 1800, Nomination of Glenn Fine—Department of Defense, 114th Cong. (2017), https://www.congress.gov/nomination/114th-congress/1800. President Obama's second nomination was submitted on January 4, 2017, and withdrawn on February 28, 2017. PN 2, Nomination of Glenn Fine—Department of Defense, 115th Cong. (2017), https://www.congress.gov/nomination/115th-congress/2. President Trump's first nomination was submitted on April 6, 2020, and returned on January 3, 2021. PN 1714, Nomination of Jason Abend—Department of Defense, 116th Cong. (2021), https://www.congress.gov/nomination/116th-congress/1714. President Trump's second nomination was submitted on January 6, 2021, and withdrawn on February 4, 2021. PN 32, Nomination of Jason Abend—Department of Defense, 117th Cong. (2021), https://www.congress.gov/nomination/117th-congress/32.

1

the start of the new administration. On November 15, 2021, President Biden submitted his first (and, to date, only) nomination to fill the vacancy. That nomination remains pending in the Senate. PN 1368, Nomination of Robert Phillip Storch—Department of Defense, 117th Cong. (2022), https://www.congress.gov/nomination/117th-congress/1368.

Ordinarily, section 3346 of the Vacancies Reform Act permits an acting officer to serve for an initial period of 210 days immediately after the vacancy arises; during the pendency of the first and second nominations; and for 210-day periods following the rejection, withdrawal, or return of each of the first and second nominations. 5 U.S.C. § 3346. The effect of this time sequence is that if a President submits a nomination within the initial 210-day period, then the Act authorizes a potentially continuous period of acting service: from the date of the vacancy to up to 210 days or until a first nomination is submitted; through the pendency of the first nomination; through up to another 210 days or until a second nomination is submitted, if the first nomination is rejected, withdrawn, or returned; through the pendency of a second nomination; and finally, through another 210-day period, if the second nomination is rejected, withdrawn, or returned. This sequence of acting service ends upon the expiration of the final 210-day period following an unsuccessful second nomination, after which no one may serve in the vacant position in an acting capacity. *Id.* § 3346(b)(2). Upon the inauguration of a new President, section 3349a of the Vacancies Reform Act, *id.* § 3349a, creates an important exception to the regular progression of this sequence. Section 3349a "adjusts the calculation of the time limits to provide extra time for a new administration," so that "even if an office became vacant well before the new President takes office, the time limit begins anew." *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 69–70 (1999) ("1999 Guidance").

This Office has long advised that section 3349a restarts the entire time sequence in section 3346, such that a new presidential administration gets its full benefit even if prior Presidents submitted two or more unsuccessful nominations for the vacant position. *Id.* The Government Accountability Office ("GAO") recently disagreed with that view. *In re Department of Defense, Office of Inspector General—Legality of Service of Acting Inspector General*, B-333853, 2022 WL 2341425 (Comp. Gen. June 28,

2022) ("GAO Determination").[2] In GAO's view, the nominations of prior Presidents count against the new administration. Under that view, when a new President inherits a vacancy with two or more unsuccessful nominations, the time limit at the end of the 210 days following the prior President's second nomination denies authorization for any further acting service based on the new President's submission of nominations. In other words, GAO concluded that, for positions for which a prior President submitted two or more unsuccessful nominations, section 3349a authorizes only a revival (and 90-day extension) of a single 210-day period of acting service. GAO thus concluded that the current service of the Acting Inspector General is in violation of the Vacancies Reform Act. *Id.* at *1. That reading is at odds with the text, structure, and purpose of the Vacancies Reform Act. We conclude that the Acting Inspector General may continue to serve while President Biden's first nomination is pending in the Senate; during the pendency of any second nomination submitted by President Biden; and for the 210-day periods following any rejection, withdrawal, or return of each of those two nominations. 5 U.S.C. § 3346(a)(2), (b).

## I.

The Vacancies Reform Act authorizes acting service in positions to be filled through appointment by the President, by and with the advice and consent of the Senate. It generally is the "exclusive means" for naming an acting officer in a Senate-confirmed position. 5 U.S.C. § 3347(a). Section 3345(a) identifies certain categories of officials who are eligible for acting service, all of whom serve "subject to the time limitations of section 3346." *Id.* § 3345(a)(1), (2), (3).

As relevant here, section 3346 sets out the following timing rules:

---

[2] The Vacancies Reform Act directs the Comptroller General, as head of the GAO, to notify Congress, the President, and the Office of Personnel Management upon determining that an acting officer is serving in excess of the time permitted by the Act, 5 U.S.C. § 3349(b), but such determinations are not binding on the Executive Branch because the Comptroller General is an agent of Congress. *See Prioritizing Programs to Exempt Small Businesses from Competition in Federal Contracts*, 33 Op. O.L.C. 284, 302–03 (2009); *see also Bowsher v. Synar*, 478 U.S. 714, 727–32 (1986).

(a)  Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office—

   (1)  for no longer than 210 days beginning on the date the vacancy occurs; or

   (2)  subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

(b)

   (1)  If the first nomination for the office is rejected by the Senate, withdrawn, or returned to the President by the Senate, the person may continue to serve as the acting officer for no more than 210 days after the date of such rejection, withdrawal, or return.

   (2)  Notwithstanding paragraph (1), if a second nomination for the office is submitted to the Senate after the rejection, withdrawal, or return of the first nomination, the person serving as the acting officer may continue to serve—

      (A)  until the second nomination is confirmed; or

      (B)  for no more than 210 days after the second nomination is rejected, withdrawn, or returned.

*Id.* § 3346(a)–(b). The Act includes a special timing provision that applies upon the occurrence of a "transitional inauguration day" in which a new President "swears or affirms the oath of office as President." *Id.* § 3349a(a). It provides:

(b)  With respect to any vacancy that exists during the 60-day period beginning on a transitional inauguration day, the 210-day period under section 3346 or 3348 shall be deemed to begin on the later of the date occurring—

   (1)  90 days after such transitional inauguration day; or

   (2)  90 days after the date on which the vacancy occurs.

*Id.* § 3349a(b). Section 3349a does not directly authorize a new period of acting service upon the inauguration of a new President. Instead, it operates by specifying a new date on which "the 210-day period under section 3346 or 3348 shall be deemed to begin."

At the outset, we note that the phrase "the 210-day period under section 3346 or 3348" in section 3349a(b) is somewhat ambiguous. There are multiple 210-day periods in section 3346: one that arises after the occurrence of a vacancy, *id.* § 3346(a)(1); another following the rejection, withdrawal, or return of a first nomination, *id.* § 3346(b)(1); and a final one following the rejection, withdrawal, or return of a second nomination, *id.* § 3346(b)(2)(B). Section 3349a's reference to the 210-day period in section 3348 offers no clarity because the only mention of 210 days in section 3348 refers to "any 210-day period under section 3346." *Id.* § 3348(c). GAO concluded that "the ambiguity is irrelevant," stating that it "read[s] section 3349a(b) to create an extended or new 300-day period of acting service, regardless of whether this period coincides with any particular circumstance." GAO Determination at *5 n.38. The text of section 3349a(b), however, cannot be uncoupled from section 3346 in that way. Section 3349a operates only through section 3346, so it is incorrect to say that section 3349a authorizes a period of acting service independent of the circumstances addressed in section 3346.

Contrary to GAO's reading, "the 210-day period" in section 3349a refers by its terms to a particular period "under section 3346," and, in context, we think the best reading is that "the 210-day period" refers to the initial 210-day period in section 3346(a)(1). Outside of a presidential transition, that period ordinarily "begin[s] on the date the vacancy occurs." Section 3349a(b) redesignates the "date the vacancy occurs" when a new President takes office. For a position that is occupied on inauguration day but becomes vacant within the first 60 days of the administration, the vacancy is "deemed" to have occurred 90 days following the actual date of occurrence. 5 U.S.C. § 3349a(b)(2). We read section 3349a to treat preexisting or inauguration-day vacancies in the same way, deeming the vacancy to have occurred 90 days after inauguration day. *Id.* § 3349a(b)(1).

An alternate reading, in which section 3349a would be understood to refer to any of the 210-day periods in section 3346, ignores the text. The text speaks of "the" 210-day period, not "each" 210-day period in section 3346. Moreover, that reading would lead to odd results. Under that read-

ing, every 210-day period under section 3346 for every position that is vacant on inauguration day would expire on the exact same day— November 16.[3] That would disrupt the carefully constructed time sequence in section 3346 by effectively eliminating the 210-day period of acting service after a first or second nomination once there is a presidential transition, even for a position with no nominations during the prior administration.[4] We see no plausible reason that Congress would have

---

[3] This assumes that a new President is inaugurated on January 20 of a non-leap year, as would normally be the case. We arrive at November 16 by first counting 90 days after January 20, as section 3349a(b)(1) provides, which makes "day 90" April 20 (11 days in January, 28 days in February, 31 days in March, and 20 days in April). We then count 210 days from April 20 without recounting April 20 (10 days in April, 31 days in May, 30 days in June, 31 days in both July and August, 30 days in September, 31 days in October, 16 days in November). That places the final day of the 210-day period on November 16, meaning that an acting officer serving under that period (without any extension for a nomination) could serve through November 16. This method of counting accords with our longstanding view and is consistent with earlier views of GAO. *See Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177, 181 n.5 (2001) (noting that because a particular vacancy "occurred on January 20, 2001," and section 3349a applied, the acting officer "may serve . . . at least until November 16, 2001"); *see also Violation of the 210-Day Limit Imposed by the Federal Vacancies Reform Act of 1998—Administrator, Centers for Medicare & Medicaid Services*, B-321357, at 2 (Comp. Gen. Jul. 18, 2016), https://www.gao.gov/assets/b-321357.pdf (concluding that "the 210-day period began to run 90 days after January 20, 2009—on April 20, 2009—and ended on November 16, 2009," and that "[c]onsequently, the position should have been vacant beginning November 17, 2009"). The recent GAO Determination appears to count time differently, stating without analysis that the 300-day period ended on November 15, 2021. GAO Determination at *6 n.46. We have reviewed our method of counting and adhere to our view that, when inauguration occurs on January 20, the last day of the 300-day period under section 3349a(b)(1) is November 16.

[4] For instance, suppose that a new President submits a first nomination for an office that became vacant on or before inauguration day and withdraws the nomination on November 17. Ordinarily, such a withdrawal would trigger a 210-day period of acting service under section 3346(b)(1). But if section 3349a were to deem every 210-day period for such an office to expire 300 days into the new President's term, then that time allowance for acting service would have run even before the withdrawal occurred. That would leave the new administration without any ability to have an acting officer until the President submits a second nomination. If the President thereafter submits a second nomination that is later returned by the Senate, the President similarly would be deprived of the final 210-day period authorized by section 3346(b)(2)(B) because, here again, every 210-day period under section 3346 would have already expired 300 days into the new administration. This is just one example of how reading section 3349a's reference to "the 210-day period" as applying to all of section 3346's 210-day periods would turn

intended such a result and conclude that "the 210-day period" in section 3349a necessarily refers to the initial 210-day period in section 3346(a)(1).

## II.

Having established that the 210-day period referenced in section 3349a is the initial 210-day period under section 3346(a)(1), we turn to the question whether section 3349a's resetting of that period restarts the entire time sequence in section 3346, such that nominations of a prior President do not count against the time allowed in a new administration, or whether, as GAO concluded, the disability on acting service that arises after two nominations carries forward into future administrations. Given the interrelated and sequential nature of the time periods in section 3346, we conclude that section 3349a is best read to reset the entire time sequence. That reading allows a new President to have an acting officer serve for an initial 300-day period, during that President's first two nominations for a vacant position, and for 210-day periods following each of those nominations.

The text of section 3349a(b) does not expressly speak to this issue, as it says nothing about its effect on prior nominations. Read in the strictest literal way in which the text has no further effect than what it expressly states, section 3349a(b) might be understood as resetting (and extending by 90 days) the initial 210-day period in section 3346(a)(1) without lifting any prior disability on acting service that arose because of a previous administration's successive nominations. The consequence of that reading would be that if a prior administration had submitted two or more nominations, then a new President would gain no benefit at all from section 3349a—not even a renewal of the initial 210-day period. That is because section 3346's authorization of acting service ceases after the final 210-day period following a second nomination, and the strictest reading of section 3349a(b)'s text would not lift that disability on acting service. Neither we nor GAO have ever subscribed to that reading, which is at odds with Congress's purpose of "go[ing] out of its way to accommodate the inauguration of a new President by giving the new administration [time] to forward nominations, something not . . . contained in the [prede-

---

section 3349a into a disadvantage for a new President, in a way that Congress could not have intended.

cessor] Vacancies Act." 144 Cong. Rec. 22,512 (1998) (statement of Sen. Robert Byrd). As we noted in our 1999 Guidance, section 3349a "provides that for any vacancy existing at any point during a sixty-day period beginning on the date the oath of office is taken by a new President . . . the time limit begins anew." 1999 Guidance, 23 Op. O.L.C. at 69–70; *accord* GAO Determination at *3 (concluding that section 3349a authorizes acting service "even if one or more of the periods of permissible acting service specified in section 3346 began to run or expired prior to inauguration day").

With that strict literal reading of section 3349a(b) producing a result plainly inconsistent with Congress's apparent design, the question becomes how best to understand the relationship between that provision and section 3346. For any period of acting service to become available at the start of an administration, notwithstanding a prior administration's two or more unsuccessful nominations, section 3349a(b) must be read to lift the prohibition on acting service that arises from those nominations.[5] And once that disability is removed for one purpose—authorizing an initial 210-day period of acting service under section 3346(a)(1)—it best accords with the structure of the Act's timing provisions to read section 3349a(b) as removing the disability for all purposes, thereby reauthorizing the entire time sequence of section 3346 and affording the new President a fresh start to submit up to two nominations while an acting official fills the position temporarily.

Section 3346 is designed to authorize an initial 210-day period of acting service, followed by additional periods of acting service upon the submission of nominations. To that end, the provision sets out a series of interrelated time limitations that apply in succession. As outlined above, it provides for an initial period of acting service in section 3346(a)(1). Then, "once a first or second nomination for the office is submitted to the Senate," section 3346(a)(2) authorizes acting service "from the date of such nomination for the period that the nomination is pending in the Senate." Finally, "[i]f the first [or second] nomination for the office is rejected by

---

[5] GAO asserts that section 3349a "does not address nominations for purposes of the time periods in section 3346(a)(2) and (b)," GAO Determination at *4, but its conclusion that a new administration is entitled to an initial 210-day period of acting service under section 3346(a)(1) requires section 3349a to have some effect on a prohibition stemming from a prior administration's successive nominations. Otherwise, no new period of acting service could begin.

the Senate, withdrawn, or returned to the President," then section 3346(b) authorizes a period of acting service lasting "no more than 210 days." 5 U.S.C. § 3346(b)(1) (first nominations), (b)(2)(B) (second nominations). Together, this sequence of time limitations represents a carefully designed scheme that balances the importance of the Senate's providing advice on Senate-confirmed offices with the operational needs of government. When a vacancy arises, the scheme provides the President with an incentive to submit a qualified nominee in a prompt manner by limiting the initially available period of acting service. If a President submits a nomination during that window of time, then the statute allows for continuity while the Senate considers the nominee and the appointment is largely out of the President's hands.[6] If the nomination is unsuccessful, then the authorization of another 210 days of acting service provides the President with a new window to make a nomination while still preserving the ability to have continuity in the vacant position. Finally, if the President submits a second nomination during that window, then the statute allows for further continuity during the pendency of the nomination and, if that nomination is unsuccessful, for a final 210-day period.

When a new President takes office, section 3349a renews the initial 210-day period of acting service for any preexisting vacancies. It does so by "deem[ing]" the start of the period of acting service in section 3346(a)(1), which ordinarily "begin[s] on the date the vacancy occurs," to be 90 days after inauguration. By deeming a preexisting vacancy to have newly arisen after inauguration, section 3349a(b)(1) gives a new President the same initial period of acting service that section 3346 ordinarily confers when a vacancy arises within an administration. *See* 1999 Guidance, 23 Op. O.L.C. at 69–70.

By resetting the initial time period at the beginning of this sequence designed to encourage a new President to submit nominations promptly, section 3349a also puts back into effect the entire time sequence in section 3346 that provides for continuous acting service as long as the Presi-

---

[6] Although section 3346 is structured in a way that allows continuous acting service if the President submits nominations prior to the expiration of the 210-day windows in 5 U.S.C. § 3346(a)(1) and (b)(1), we note that, in practice, gaps in authority for acting service may occur if either of those 210-day windows expires without a nomination. If time expires under section 3346(a)(1) or (b)(1) without a nominee, there can be no acting official until the submission of a first or second nomination, upon which the authority for an acting officer to serve springs back under 5 U.S.C. § 3346(a)(2) or (b)(2). *See* 1999 Guidance, 23 Op. O.L.C. at 68.

dent submits nominations within the statutory time periods. Thus, once the new President submits a first nomination in that administration, the nomination-based timing provisions take effect. At that point, the new President's nomination becomes the "first" nomination following the newly deemed "date the vacancy occurs," which allows for additional acting service during the pendency of that nomination. 5 U.S.C. § 3346(a)(1), (2). This provides a new President with the same incentive that section 3346 ordinarily provides to encourage a prompt nomination. Then, once the nomination is in the Senate's hands, the authorization of additional acting service allows for continuity in the position during the pendency of the nomination—as would ordinarily be the case absent a presidential transition. GAO's contrary view, which assumes that the first part of the sequence can be reactivated without having any effect on the others, fails to recognize the congressional design behind the interrelated time sequence in section 3346.

Reading section 3349a as authorizing only an initial (albeit extended) 210-day period of acting service in section 3346(a)(1) would break apart this sequence for a new President and produce results that do not square with the timing provision's purpose of encouraging prompt nominations and enabling continuity of acting service in Senate-confirmed positions. A new presidential administration will have hundreds of Senate-confirmed positions to fill, many of which may well have been vacant for substantial periods of time in the prior administration. If the unsuccessful nominations of prior administrations count against the new President, then after the initial period of acting service, no one will be able to serve in affected positions in an acting capacity. 5 U.S.C. § 3348(b)(1). While properly authorized delegees could perform certain (and in many cases, all) of the functions of the vacant positions, they could not perform any non-delegable "function or duty," which an acting official could have performed. *Id.* § 3348(a)(2) (defining "function or duty" as "any function or duty of the applicable office . . . established by statute [or regulation]" and "required by statute [or regulation] to be performed by the applicable officer (and only that officer)"), (b)(2) (limiting who may perform such functions or duties).[7] Thus, reading section 3349a as resetting only the

---

[7] Ordinarily, the heads of executive agencies may perform the non-delegable functions or duties of a vacant Senate-confirmed position in their agency when there is no acting official temporarily filling the vacancy. 5 U.S.C. § 3348(b)(2). But that authorization to agency heads does not extend to the performance of the non-delegable functions and

initial 210-day period would functionally turn that period into a deadline for completion of the entire advice-and-consent process. For positions that cannot be filled in that time, truncating section 3346 at the beginning of a presidential administration could lead to substantial periods of time without an acting or Senate-confirmed official at the helm.

Such a reading would create significant and distinct administrative burdens on a new administration when there is no evidence that Congress intended to do that. To identify positions that cannot be filled on an acting basis beyond the first 300 days after inauguration, an incoming administration would need to swiftly evaluate the nomination history of every vacant Senate-confirmed office, dating back to when each position became vacant (which, as here, may have occurred even before the new President's immediate predecessor took office). The administration would then need to consider the limitations on certain positions in the already complex judgment about which nominations to prioritize in the early days of the administration. We decline to read a provision crafted to provide new administrations with flexibility in a way that could burden their operation.

## III.

The legislative history accords with our understanding of section 3349a. As explained in the Senate report, Congress's goal in establishing time limits for acting service was "not to punish or to obstruct, nor to inconvenience for the purpose of inconveniencing, but, rather, to encourage that a nomination be forwarded to the Senate after more than sufficient time for doing so has elapsed." S. Rep. No. 105-250, at 19 (1998). The authority for an acting official to serve during the pendency of a nomination was designed to "eliminate[]" "[a]ny inconvenience to the executive branch . . . by the President's unilateral decision to make a nomination, for once such a nomination is made, the acting officer can

---

duties of certain positions within the Executive Branch, including "any Inspector General appointed by the President, by and with the advice and consent of the Senate." *Id.* § 3348(e) (providing that "[t]his section"—including the authorization in subsection (b)(2)—"shall not apply to" certain positions). We do not know whether the Inspector General for the Department of Defense has non-delegable duties that could not be performed by subordinate officials in the absence of an Acting Inspector General. But we note that truncating the time sequence in section 3346 may create particular hardship with respect to positions for which intervention by the agency head is constrained.

resume service." *Id.*; *see also id.* at 14 ("The Committee extends the time period for acting service [upon the submission of a nomination] so as to create an incentive for the President to submit a nomination.").

Although the legislative history does not expressly address the effect of a prior President's nominations on acting service in a new presidential administration, its discussions of section 3349a suggest that Congress designed the provision to allow the new President more time to submit nominations—and to have acting officers serve during those nominations. There is no indication in the legislative history that Congress intended to hold a prior administration's nomination history against a new President. On the contrary, the legislative history recognizes the need for special accommodations for a new President. The Senate report acknowledges that "a new president will have essentially all positions in the executive branch requiring Senate confirmation to fill when he assumes office and may require additional time to nominate individuals to fill them." *Id.* at 21. Certain committee members that supported voting the bill out of committee observed that "the reality of the nomination process when a new President assumes office" requires "special consideration." *Id.* at 32. In a floor statement, one of the bill's sponsors, Senator Robert Byrd, stated that "the Act . . . appropriately recognizes the difficulties faced by a new President" and that section 3349a "will give a new President up to 300 days to forward nominations to the Senate." 144 Cong. Rec. 27,498 (1998) (statement of Sen. Robert Byrd); *see also id.* at 22,512 (statement of Sen. Robert Byrd) ("It is a bill that goes out of its way to accommodate the inauguration of a new President by giving the new administration [time] to forward nominations.").

The focus throughout these discussions was on the submission of nominations, rather than on the actual filling of the vacancy, although Congress was aware that the Senate's consideration of nominees could extend well beyond November 16 in an inaugural year. It seems implausible that Congress intended to withhold acting authority while a first nomination submitted promptly by a new President was still pending before the Senate. Yet that would be the effect of GAO's interpretation for any position for which there had been two unsuccessful nominations by a prior President. There is no indication that Congress expected a new President not only to submit a nomination but also to receive the Senate's advice and consent and complete the appointment in the first 300 days. If anything, due to the volume of nominations for the Senate to consider at the outset of a new administration, the confirmation process may well take longer

than at other times. In any event, there is no indication that Congress expected the confirmation process to be completed more expeditiously at the beginning of a new administration as compared to other times. With respect to positions for which a prior administration submitted two or more nominations, the flexibility Congress intended to give a new administration supports the conclusion that section 3349a resets the time sequence in section 3346 in its entirety.

## IV.

Applying this reasoning to the Acting Inspector General for the Department of Defense, we conclude that the prior nominations submitted by predecessor Presidents do not affect the length of allowable acting service under section 3346.[8] The Acting Inspector General may continue to serve consistent with the Vacancies Reform Act during the pendency of the current nomination—the first submitted by President Biden—and, if the nomination does not lead to confirmation, then during the pendency of a second nomination submitted by President Biden, and for 210 days following the rejection, withdrawal, or return of either nomination.

CHRISTOPHER H. SCHROEDER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[8] As noted above, President Biden withdrew President Trump's nomination 15 days into the new administration, which, under the terms of section 3349a(b)(1), was before "the 210-day period under section 3346" and the section 3346 time sequence as a whole was "deemed to begin." When he submitted his first nomination on November 15, 2021, section 3346(a)(2) was available to authorize an acting officer's service during the pendency of that first nomination. We do not address whether a prior President's nomination left pending past the date the vacancy was "deemed to begin" in a new administration would be attributed to the new President for purposes of the time limitations in the Act.